IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TIMOTHY RABINEAU,<br><br>　　　　Defendant. | No. 22-CR-69-CJW-MAR<br><br>**SENTENCING OPINION** |

_____

## I.　　INTRODUCTION

This matter came on for sentencing on April 6, 2023. (Doc. 31). The government moved for an upward departure under United States Sentencing Guidelines Section 4A1.3 based on underrepresentation of criminal history, or, in the alternative, an upward variance based on the factors at Title 18, United States Code, Section 3553(a). (Doc. 27). The Court found an upward departure was warranted under Section 4A1.3. (Doc. 31). The Court stated that alternatively it would vary upward the same amount. The Court files this sentencing opinion to explain its reasoning in writing to aid the parties and the Eighth Circuit Court of Appeals, should one of the parties appeal the sentence.

## II.　　RELEVANT BACKGROUND

On September 8, 2022, a grand jury returned an Indictment charging defendant with one count of Possession with Intent to Distribute a Controlled Substance, under Title 21, United States Code, Sections 841(a)(1), and one count of Possession of a Firearm by a Felon, under Title 18, United States Code, Section 922(g)(1). (Doc. 3).

In describing the offense conduct, defendant's presentence investigation report ("PSR") stated that on July 1, 2022, law enforcement officers executed a search warrant at defendant's residence in Oxford Junction, Iowa, and defendant was not present. (Doc.

1

23, at 6). Officers located—in the living room and on top of mail addressed to the defendant—a notebook that was being used as a drug ledger, which listed multiple names of individuals who owed the seller money and listed "buds," "zips" (ounces of a controlled substance), "peaches" (Xanax), "bars" (Xanax), "carts" (marijuana vape cartridges), "Valium," "flower," "half" (½ ounce of a controlled substance), and "hits" (acid). (*Id.*). Per the above drug ledger, the seller of the substances was owed several thousand dollars by multiple individuals. (*Id.*). Officers also located in the living room two mason jars that contained a total of approximately 35 bags that each contained a green leafy substance that field tested positive for marijuana, an empty THC vape pen box that had once contained 25 marijuana vape cartridges, baggies consistent with drug packaging materials, a digital scale, and paperwork which was labeled "Instructions on Providing Urine Specimens in the Northern District of Iowa." (*Id.*). Law enforcement located in the basement a padlocked gym bag that contained one full 25-count box of 20-gauge shotgun shells. (*Id.*). Laboratory testing determined that five of the 35 seized bags weighed a combined total of 16.64 grams and contained marijuana. (*Id.*). The remaining bags of suspected marijuana were not analyzed and weighed a combined total of 62.16 grams. (*Id.*).

On November 1, 2022, defendant pleaded guilty before the Honorable Mark A. Roberts, United States Magistrate Judge, to Possession with Intent to Distribute a Controlled Substance and Possession of a Firearm by a Felon. (Doc. 16). On November 17, 2022, the Court formally accepted defendant's plea. (Doc. 18).

### III. GOVERNMENT'S SENTENCING MOTIONS

For the following reasons, the Court granted the government's motion for upward departure and, in the alternative, its motion for upward variance.

### A. *Upward Departure*

The government argued an upward departure was appropriate under United States

Sentencing Guidelines Section 4A1.3 because defendant's criminal history category substantially understates the seriousness of defendant's criminal history and the likelihood of him reoffending. (Doc. 27, at 9-14). In support, the government first cited the depth of defendant's criminal history. (*Id.*, at 10). In particular, the government asserted that defendant was charged with a crime, convicted of a crime, or subject to a prison or supervision sentence for every year for the past thirty-three years—that is, since 1990. (*Id.* (citing PSR ¶¶ 28-78)).

The government also cited defendant's 45 adult criminal convictions not scored in his criminal history calculation. (*Id.*, at 11 (citing PSR ¶¶ 29-78)).[1] These convictions include serious offenses, including indecent contact with a child after defendant performed sex acts on a three-year-old girl in his care; multiple assaults; failure to register as a sex offender; repeated violations of no-contact orders, and making death threats. (*Id.*).

The government then argued defendant is incorrigible, citing defendant's history of committing the same crimes over and over. (*Id.*). Pointing to the PSR, the government asserted defendant has committed at least twelve property offenses (*Id.* (citing PSR ¶¶ 28, 38, 39, 44, 45, 46, 48, 68, 71, 72, 76, 77)), ten driving offenses—including three convictions for operating while intoxicated (*Id.* (citing PSR ¶¶ 29, 31, 32, 33, 36, 40, 43, 61, 70, 75)), nine convictions for public intoxication or disorderly conduct (*Id.* (citing PSR ¶¶ 47, 50, 51, 59, 63, 65, 66, 67, 73)),[2] and three convictions for interference with

---

[1] Defendant objected to several PSR paragraphs within this range. (Doc. 23, at 11-27). In so far as defendant objected to any of the offenses described here, the Court overruled defendant's objections to the relevant paragraphs based on government exhibits admitted at the hearing. (Doc. 31).

[2] Defendant objected to several of these offenses. (Doc. 23, at 11-27). Almost exclusively, the Court overruled those objections, again based on evidence the government presented. (Doc. 31).

official acts (*Id.* (citing PSR ¶¶ 35, 64, 74)).

The government then cited the similarities between defendant's previous offenses and similar conduct in this offense. Specifically, the government noted defendant was convicted or charged of possession of controlled substances on three prior occasions. (*Id.*). Defendant's most recent criminal conduct, however, increasingly involves the use or possession of firearms. (*Id.*, at 11-12). For instance, in 2019, defendant was charged and convicted as a felon in possession of firearms, specifically a Winchester 16-gauge shotgun and an Escort 20-gauge shotgun. (*Id.*, at 12 (citing PSR ¶ 78)). Defendant fired the 16-gauge shotgun into the air as another individual attempted to engage defendant in a confrontation. (*Id.*).

Finally, the government cited defendant's poor performance on supervised release. (*Id.*). Citing the PSR, the government noted defendant has been discharged unsuccessfully from probation eleven times. (*Id.* (citing PSR ¶¶ 31, 32, 37, 40, 43, 48, 54, 58, 61, 74, 75)). Defendant has also violated terms of his probation, including by committing additional crimes. (*Id.* (citing PSR ¶¶ 29, 70)). Indeed, defendant committed the instant offense while he was still on supervised release from his last federal firearms conviction. (*Id.* (citing PSR ¶ 78)). On November 9, 2021, the Court modified defendant's supervised release to include two consecutive weekends in jail after defendant violated the terms of supervised release by failing to participate in substance abuse testing, voiding a urine specimen that tested positive for the presence of methamphetamine, using methamphetamine, and lying about COVID-19 exposure to avoid participating in substance abuse testing. (*Id.* (citing PSR ¶ 78)).

The government moved for an upward departure to criminal history category VI. Based on the parties' arguments, the evidence presented, and the PSR, the Court found an upward departure appropriate under Section 4A1.3. The Court found defendant's criminal history category—category IV—did not adequately reflect defendant's long

4

pattern of criminal conduct, particularly his recent federal firearms conviction, discharge of firearm, and history of convictions for violent crimes. Based on the PSR, the advisory guidelines range was 46 months' to 57 months' imprisonment. The Court departed upward one criminal history category, to criminal history category V, to arrive at a new advisory guidelines range of 57 months' to 71 months' imprisonment.

### B. Alternative Variance

In the alternative to departure, the Court stated it would vary to the same level for the same reasons as viewed through the Section 3553(a) factors alone. Thus, in the alternative to departing upward the Court would vary upward from defendant's advisory guidelines range of 46 to 57 months' imprisonment, to a range of 57 months' to 71 months' imprisonment.

### IV. CONCLUSION

For these reasons and for the reasons stated during the sentencing hearing, the Court granted the government's motion for an upward departure. In the alternative, the Court would vary upward to the same range. The Court imposed a sentence of 64 months' imprisonment.

**IT IS SO ORDERED** this 12th day of April, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa